

**IT IS ORDERED as set forth below:**

**Date: July 23, 2019**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| MARVELAY, LLC, | : | 18-69019-LRC |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Debtor. | : | BANKRUPTCY CODE |

## ORDER

On April 11, 2019, the Court held an evidentiary hearing on the Motion for

Authority for Trustee to Consent to Entry of Judgment and Order for Permanent Injunction

with Respect to State Court Proceedings under the Georgia Fair Business Practices Act (the

"Motion for Authority") (Doc. 46) and the Motion for Approval of Agreement with the

State of Georgia Regarding Modification of the Automatic Stay, Allowance of State

Claims, Disbursements to Holders of Consumer Claims, and Other Matters Under Federal

Rule Of Bankruptcy Procedure 4001(D)(1)(A)(III) and 11 U.S.C. § 105 (the "Motion for

Approval," and collectively with the Motion for Authority, the "Motions") (Doc. 53), filed

by Martha Miller, Chapter 7 Trustee ("Trustee").

Trustee seeks to settle a dispute with the State of Georgia (the "State") regarding

certain prepetition actions taken by Marvelay, LLC ("Debtor"), which the State contends

violated the Georgia Fair Business Practices Act (the "GFBPA"). An objection to the

Motions was raised by Asta Quattrocchi ("Quattrocchi") and supported by Debtor. The

Court has subject matter jurisdiction over this core proceeding. *See* 28 U.S.C. § 1334(b);

§ 157(a); § 157(b)(2)(A).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 9, 2018 (the "Petition Date"), Debtor filed a voluntary petition under

Chapter 7 of the Bankruptcy Code (the "Petition"). Shortly thereafter, the State filed a

Motion for Clarification of the Applicability of the Automatic Stay or, in the Alternative,

for Relief from the Automatic Stay (the "State's Motion for Relief"). (Doc. 7).

According to the State's Motion for Relief, Debtor's bankruptcy filing interrupted

the State's action to enforce the GFBPA against Debtor and other individuals, including

Erran Yearty, Quattrocchi, and Thomas Rickey Bray, Jr. (collectively, the "Defendants"),

which was filed on July 17, 2018, and was pending in the Superior Court of Cobb County,

Georgia (the "Action") on the Petition Date. According to the State's complaint filed in

2

the Action, the Defendants controlled approximately 4,700 internet domain names through which Debtor offered goods and services to consumers using "false and misleading representations about its identity and the service it actually provides," Debtor mispresented and failed to inform consumers of material terms and conditions of their purchases, and failed to secure reservations for services to be provided by third party vendors and paid for by consumers.   The State also alleged that Debtor's agents and employees posted false reviews on the internet to "bolster the false impression that Debtor's nonexistent businesses provide services to consumers at a specific geographical location," and that Debtor's conduct violated O.C.G.A. § 10-1-393(b), which prohibits the causing of actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services; the advertising of goods or services with intent not to sell them as advertised; and representations that goods or services have sponsorships, approval, characteristics, uses, benefits, or quantities that they do not have.[1]

The State's Motion for Relief contended that a discovery dispute remained pending in the Action on the Petition Date.   Attached to the State's Motion for Relief was a copy of

---

[1]   *See* O.C.G.A. § 10-1-397(b) ("Whenever it may appear to the Attorney General that any person is using, has used, or is about to use any method, act, or practice declared by this part or by regulations made under Code Section 10-1-394 to be unlawful and that proceedings would be in the public interest, whether or not any person has actually been misled, . . . upon a showing by the Attorney General in any superior court of competent jurisdiction that a person has violated or is about to violate [the GFBPA], the court may enter or grant any or all of the following relief: . . . (B) A civil penalty of up to a maximum of $5,000.00 per violation of [the GFBPA]; . . . (D) Restitution to any person or persons adversely affected by a defendant's actions in violation of this part; . . . or (F) Other relief as the court deems just and equitable."   O.C.G.A. § 10-1-397(b).

an order entered on October 11, 2018, by Judge Childs in the Action (the "Action Order").

In the Action Order, Judge Childs sanctioned the Defendants for certain discovery conduct

by ordering that Defendants allow and pay for a third-party vendor to conduct a forensic

examination and data extraction of all of Defendants' computers and databases no later

than November 12, 2018.   The State further contended that Debtor failed to comply with

the Action Order prior to filing the Petition and had engaged in additional spoliation of

evidence relevant to the Action.   *See* Exh. T-3.[2]   For these reasons, the State requested an

order from this Court concluding that the bankruptcy case had not stayed the Action, or,

---

[2] The parties stipulated to the authenticity of all exhibits.  When the Trustee moved for admission of Trustee's Exhibits 1 through 7, 9, 10, and 13, Quattrocchi objected on the basis of hearsay, legal conclusion, cumulativeness, argumentativeness, lack of relevance, and the continuing witness rule.  The Court has considered Exhibits T-2 (Amended Complaint), T-3 (Order for Sanctions), T-4 (Order on Contempt), T-5 (Second Order for Sanctions), and T-6 (Order Regarding Default).  The exhibits are relevant for these purposes and are not cumulative, as the Trustee testified only that she considered the documents not as to their contents.  Further, the documents are not hearsay.  Exhibits T-3, T-4, and T-5 are orders that establish the status of litigation, *United States v. Dupree,* 706 F.3d 131, 137 (2d Cir. 2013) ("[T]he question whether a court's command imposes legal obligations on a party is outside the hearsay rule's concerns."), and the Court has considered the Complaint to determine which facts would be deemed admitted if the Trustee failed to settle, rather than for the truth of its allegations.  As to the continuing witness rule, it is applied by Georgia trial courts to prevent otherwise admissible written evidence from being sent to the jury room out of concern that doing so will result in "undue emphasis" being "placed on written testimony."  *Clark v. State,* 284 Ga. 354, 355, 667 S.E.2d 37, 39 (2008).   The Court has found nothing in its research to suggest that this rule applies under the Federal Rules of Evidence.   "A federal district court applies the Federal Rules of Evidence because these rules are considered procedural, regardless of the source of the law that governs the substantive decision." *MCC-Marble Ceramic Ctr., Inc., v. Ceramica Nuova d'Agostino, S.p.A.,* 144 F.3d 1384, 1389 n.13 (11th Cir. 1998) (citing *Farnsworth on Contracts* § 7.2 at 196 & n.16 (citing cases)).   Further, the continuing witness rule applies only to writings "when the evidentiary value of the writings depends on the credibility of the writer."  *Sagenich v. State,* 255 Ga. App. 663, 556 S.E.2d 327 (2002); *see also* Ga. Handbook Criminal Evidence § 6:28 (noting that the rule generally applies to "answers to written interrogatories, written dying declarations and signed statements of guilt").   As noted above, the purpose for which the Court has considered the exhibits does not depend on the credibility of their writer. Rather, the Court is concerned with the legal effect of statements that were made in orders and pleadings in the Action, and the exhibits are, therefore, "independent and original evidence, in and of itself" of these statements.  *Sagenich,* 255 Ga. App. at 665.

alternatively, modifying the automatic stay to permit the Action to continue.

On December 14, 2018, the Court entered an order granting the State's Motion for Relief (Doc. 31), ordering that, pursuant to § 362(b)(4), the Petition did not stay the Action and, therefore, the State may continue with the Action "for all purposes that are necessary to complete discovery, pursue pre-trial motions, and otherwise bring the matter before the Superior Court or a jury for the purposes of obtaining injunction relief and an award of civil penalties and consumer restitution" and that the State "may enforce all judgments entered in the [Action], other than orders that require payment by the Debtor."

On December 17, 2018, the State Court granted the State's second motion for sanctions and struck the answer filed by Debtor in the Action and ordered that "upon entry of default, Plaintiff may file a motion for default judgment against [Debtor] . . . . seeking entry of an Order granting penalties, restitution, attorney's fees and costs, and other equitable relief as authorized under O.C.G.A. § 10-1-397." *See* Exh. T-5.  On January 10, 2019, the State Court recognized Debtor's default and scheduled a trial on damages for February 11, 2019.  *See* Exh. T-6.

On February 8, 2019, the Trustee filed the Motion for Authority, which sought "an Order granting the Trustee authority to consent to entry of [a] proposed Injunction Order and Consent Order on behalf of the Debtor and the Bankruptcy Estate" in the Action that would resolve the State's claim against Debtor and assist the Trustee in the administration

5

of the case.

The Trustee and the State proposed an Injunction Order that would have been entered by the State Court against all of the Defendants.   The Injunction Order would have made numerous findings of fact and conclusions of law regarding the Defendants' business activities in support of the relief granted in the Injunction Order—a permanent injunction against Defendants' engaging in certain conduct while advertising, marketing, promoting, and selling goods and services. The Injunction Order would have specifically stated that the Injunction Order "shall not have any preclusive effect on any rights of the Bankruptcy Estate to pursue any and all claims, including but not limited to, any fraudulent conveyance claims and alter ego claims against any third parties, including the other Defendants in this action" and that the "findings of facts and conclusions of law contained herein shall not be binding on the Debtor or Trustee in any other action and is not intended to prejudice or estop any claim that the Trustee, Debtor or the Bankruptcy Estate may pursue against any third party including the other Defendants."

The Trustee also sought authority to enter a Consent Order, which would have been entered by the State Court and would have provided for the entry of a judgment against Debtor for: (1) civil penalties in the total amount of $11,405,000; (2) restitution of $14,232,210; and (3) $362,790.00 for attorney fees and costs incurred for bringing the Complaint.   The Consent Order would have provided for no relief against the Defendants

6

other than Debtor.

On March 7, 2019, the Trustee filed the Motion for Approval, in which the Trustee sought approval of an agreement between the Trustee and the State with regard to the automatic stay.  The Motion for Approval anticipated the execution of an agreement between the Trustee and the State (the "Agreement"), under which "the automatic stay . . . shall be modified to permit the [State] (i) to collect payment and enforce [a State Court judgment] against any third parties, including the non-debtor Defendants in the [Action], and (ii) to take any collection actions with respect to [a State Court judgment] against such parties"; "the automatic stay will not stay any action by the [State] to enforce and collect any judgments obtained by the [State] against the non-debtor Defendants regardless of whether collection involves the Bankruptcy Estate or property thereof"; and the Trustee would agree to allow the State a general unsecured claim" in the same amount provided for in the Consent Order, as opposed to the amount stated in the proof of claim filed previously by the State—$22,178,685,199.60.   At the hearing, counsel for the Trustee explained that the stay relief provisions in the Agreement were intended to avoid issues as to whether the State, while pursuing its claims against non-debtor parties, might violate the automatic stay by pursuing alter ego claims and fraudulent transfer claims that belong to Debtor's bankruptcy estate.

The Agreement also provided that: (1) funds collected by the State from enforcing a

judgment against Debtor and the non-debtor Defendants to the extent such collection involved Debtor's estate or property thereof, would constitute property of the bankruptcy estate and would be administered by the Trustee and used to pay allowed claims filed in this case; and (2) any distribution to which the State would be entitled from Debtor's bankruptcy estate would be used to create a consumer fund from which the Trustee would distribute funds to holders of allowed general unsecured consumer claims.

On March 29, 2019, Quattrocchi filed his opposition to the Motions (Doc. No. 61) (the "Objection").   In the Objection, Quattrocchi argued that the Court should not grant the Motions because:   (1) the Injunction Order serves no purpose because this is a Chapter 7 case, in which Debtor is no longer operating and there is no risk that the Trustee will perform any of the acts to be enjoined; (2) the Motions "are plainly intended as a *sub rosa* attempt to prejudice the rights of non-Debtor parties in the [Action] and to manipulate this Court into implied 'approval' of the findings and conclusions in the Injunction Order; and (3) the Agreement would "delegate the Trustee's rights and duties to pursue any alter ego theory or fraudulent conveyance claims that the estate may have to the State."

Prior to the hearing on the Motions, the Trustee filed a supplemental hearing brief (Doc. No. 65), in which the Trustee amended the Motion for Authority to no longer seek authority for the Trustee to consent to the entry of the Injunction Order and to seek authority for the Trustee to consent to entry of a revised consent order (the "Revised

Consent Order") instead of the Consent Order.   The Trustee also amended the Motion for

Approval to seek approval of a revised agreement with the State (the "Revised

Agreement").

As amended, the Motions now seek permission for the Trustee to enter into the

Revised Consent Order, which makes findings of fact and conclusions of law only with

regard to Debtor and "specifically provides that the findings and conclusions therein shall

not be binding on the other defendants in the State Court Action."   The Motions, as

amended, also seek approval of the Revised Agreement, which eliminates the provisions

under which the automatic stay would have been lifted to "permit the State of Georgia to

pursue claims against third parties."   The Revised Agreement continues to allow the

Trustee to redistribute funds that would be payable to the State to those injured consumers

who have filed claims in this case and makes clear that the portion of the State's claim

attributable to civil penalties ($11,405,000) will be subordinated and paid at the priority

level prescribed by § 726(a)(4).

The Trustee asserts that the amendments made to the Motions have resolved all of

Quattrocchi's objections.   At the hearing, Quattrochhi continued to press his objections,

insisting that the Trustee did not conduct a sufficient investigation into the State's claims

and that the entry of the Revised Consent Order and the Revised Agreement would serve no

purpose and would be unfairly prejudicial to the nondebtor Defendants.

9

During the hearing, the Trustee testified that, within two days of the filing of Debtor's case, she began her investigation by visiting Debtor's facility, which was primarily a large call center, and meeting with Debtor's principals.  At the facility, the Trustee found no computer server.   The general state of the premises was that it appeared to have been "cleaned out," with empty file cabinets and empty desk drawers.   The only financial records available to the Trustee turned out to be vendor requests for payment. The Trustee and her accountant interviewed the two principals regarding Debtor's business and how the Debtor ended up in bankruptcy.   In the premises, the Trustee found about forty computers and some copiers and attempted to retrieve data from these items.

The Trustee reviewed the pleadings filed in the Action, including the complaint and amended complaint, the State Court's order granting the State's motion for sanctions (Exh. T-3), the State Court's order on contempt (Exh. T-4), the State Court's order granting the State's second motion for sanctions (Exh. T-5), and the State's memorandum in support of default judgment (Exh. T-13).   The Trustee testified as to her understanding of the relief sought by the State against the Debtor and the nondebtor Defendants as a challenge under the GFBPA to Debtor's practice of using a national internet marketing system that misrepresented facts to make it appear as if Debtor was the provider of purchased services, its failure to disclose that a third party provided the services and Debtor's accurate location and contact information, and its use of false endorsements.   The Trustee further testified

10

that, when the State contacted her about the filing of the State's Motion for Relief, she
understood that the State was seeking the entry of an injunction, civil penalties, restitution,
attorney's fees, and costs.   In deciding how to proceed with the administration of the case,
she considered the fact that Debtor's answer had been stricken and Debtor's main trial
counsel had withdrawn from the case, leaving Debtor unrepresented in the Action.   Such
facts gave the Trustee concern regarding the liability that could accrue to Debtor's
bankruptcy estate.   The Trustee believed that she had no way to defend the claims and she
based her belief upon her understanding that Debtor was in default, due to its answer having
been stricken, that the State had moved for entry of default judgment, and, even if Debtor
were not in default, the documents necessary to such a defense had been destroyed through
spoliation.   In negotiating the settlement with the State, the Trustee's goal was to limit the
estate's exposure to liability.

The Trustee further considered the difference between the resources available to the
Trustee and those available to the State for litigating the claims.   She also met with the
investigators working on the case for the State and reviewed the State's documents in
support of its claims of $22 billion and considered the statutory basis upon which the State
rested its claims.   In arriving at a suitable figure for the settlement of the State's claim, the
Trustee considered Trustee's Exhibit 13, which is a summary prepared by the State of the
number alleged violations of the GFBPA by Debtor, multiplied by the statutory amount of

11

$5,000 per violation, and looked at the number of customers—60,000[3]—who had been affected by Debtor's conduct and the number of days that Debtor had operated its business using the allegedly violative practices.   Based on her investigation, the Trustee concluded that the potential for liability was far greater than the amount of the settlement arrived at with the State.   In further determining whether to agree to the amount of the State's claim, the Trustee reviewed Trustee's Exhibits 11 and 12, which are an itemized list of time spent by professionals working for the State.

When deciding whether to enter the settlement, the Trustee was not aware of any other settlements that the State had offered to or entered with any of the nondebtor Defendants.   She testified that, if the State had been willing to settle with other defendants on better terms, such information would have been a factor in making her decision. Nonetheless, the Trustee testified that learning of a potential settlement between the State and Defendant Thomas Ricky Bray, Jr. for a lesser amount with better terms would not have prevented her from entering the settlement with the State because, to her knowledge, Defendant Bray played a lesser role in Debtor's business and had limited financial resources.

Finally, when questioned as to the mechanics of the settlement and the distribution, the Trustee agreed that it may be necessary to extend the claims bar date to allow additional

---

[3]  This number was provided to the Trustee by Debtor's principals.

injured consumers to file proofs of claim and that the possibility existed that consumer claims could be paid twice.

## CONCLUSIONS OF LAW

When deciding whether to approve a settlement, the bankruptcy court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (quoting *Martin v. Kane (In re A & C Prop.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)). "Courts consider these factors to determine 'the fairness, reasonableness and adequacy of a proposed settlement agreement.'" *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1312–13 (11th Cir. 2009) (quoting *Martin v. Kane (In re A & C Prop.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)).   The Supreme Court has explained that:

> [t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors

13

relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968); *see also In re Vazquez*, 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005) ("The court is neither to 'rubber stamp' the trustee's proposals nor to substitute its judgment for the trustee's, but rather to canvass the issues and determine whether the settlement falls below the lowest point in the range of reasonableness." (internal quotation marks and citation omitted)).   That being said, the Court is "not required to hold a mini-trial on the issues involved in the case being compromised," but rather is obligated to canvass "the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Dennett,* 449 B.R. 139, 144–45 (Bankr. D. Utah 2011). "[S]ettlements are favored in bankruptcy," and "[a]ppellate courts have held that a bankruptcy court's approval of a compromise must be affirmed unless the court's determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data."  *Id*. at 144 (Bankr. D. Utah 2011).

Quattrochhi asserts that the Trustee has not demonstrated that the proposed settlement is in the best interest of the Estate.   First, Quattrochhi submits that the settlement serves no purpose other than to give the State Court the false perception that

this Court has independently determined the truth of the factual findings contained in the Revised Consent Order for purposes of obtaining some advantage against the nondebtor Defendants.   Second, Quattrochhi takes issue with the fact that the settlement does not fully resolve the issues between Debtor and the State, as it would preserve the State's ability to seek an injunction against Debtor and to seek other relief that has not been granted previously.   In essence, Quattrochhi questions why the entry of the Revised Consent Order or any further resolution of the State Court Action as it pertains to Debtor is even necessary, given the fact that the Trustee is agreeing to the amount of the allowed claim.

As to the probability of success in the litigation and the complexity, expense, inconvenience, and delay of the litigation factors, the Court has reviewed the Amended Complaint and concludes that, if the Trustee did not agree to entry of the consent judgment, the Action would likely be resolved by the State Court in the State's favor as to liability because Debtor is in default, the factual allegations in the Amended Complaint are deemed admitted, and such allegations appear to state a claim against Debtor for liability under the GFBPA.   The Trustee would then have to decide whether to incur additional expenses in defending the trial on damages or take the risk that, based on the amount the State is asking the State Court to award, the damages awarded could greatly exceed the settlement amount.   Having considered the allegations of the Amended

Complaint, the number of customers Debtor has transacted business with, and the maximum statutory penalty allowable under O.C.G.A. § 10-1-397(b), the Court concludes that the probability of the Estate's limiting its exposure to damages in an amount below the settlement amount is quite low. Therefore, the low probability of success and the additional expense to be incurred in the process of defending the suit favors approval of the settlement.[4]

Finally, as to the paramount interest of the creditors and a proper deference to their reasonable views, the Court concludes that this factor also favors approval of the settlement. Other than the State, no creditors with filed proofs of claim have weighed in on whether the settlement should be approved. The State, however, obviously supports the settlement and acts for the benefit of several of the creditors who have filed claims. The settlement would likely reduce the amount of the claim to be paid to the State, which would inure to the benefit of the nonconsumer creditors.

As to whether the settlement is overall fair and equitable and was negotiated at arm's length and in good faith, the State and the Trustee take the position that the Trustee's agreement to the findings of fact and conclusions of law is necessary to permit the entry of a judgment, while Quattrochi insists that the State Court would enter a consent judgment without findings of fact. Further, where the Trustee has agreed to an

---

[4] As the Estate is the defendant in the Action, the difficulties of collection factor does not apply to this case.

16

allowed claim in the bankruptcy case, Quattrochi argues that the State does not even need a judgment. According to Quattrochi, the State's insistence on the entry of a judgment with findings of fact supports the conclusion that the State is acting out of an improper motive and is merely trying to obtain a litigation advantage over the nondebtor Defendants. Quattrochi urges the Court to withhold its approval of the settlement because such is not an equitable and proper use of the bankruptcy system.

The Court believes that the State's desire to have a judgment entered against Debtor is reasonable under the circumstances. Even though the Trustee has agreed to the allowance of a claim in a certain amount, the State may be concerned that another party in interest may object to the claim and assert that the Trustee's agreement to allow the claim does not preclude a party in interest from objecting. The state of the law is unsettled with regard to whether a creditor has standing to object to another creditor's claim when the Trustee agrees to allow a claim. *See* 11 U.S.C. § 502(a); *In re C.P. Hall Co.*, 513 B.R. 540, 544 (Bankr. N.D. Ill. 2014) ("The court's obligation to rule on a claim objection is mandatory, and the creditor's right to a ruling is also unqualified. Nothing in the Code subordinates that right to the trustee's duty to administer the estate, let alone his agreement with a creditor that the creditor's claim will be allowed."); *In re Mechanicsburg Fitness, Inc.*, 592 B.R. 798, 808 (Bankr. M.D. Pa. 2018) ("The most natural reading of section 502(a), then, is that it confers an unfettered right upon chapter

17

7 creditors to object to the claims or interest of others.").   It is not unreasonable or clear

proof of an ulterior motive for the State to request the entry of a judgment, as opposed to

having a claim "liquidated" only by the Trustee's agreement not to object to its proof of

claim.

Further, the Court rejects the argument that the State Court will be misled by this

Court's granting authority to the Trustee to enter the Revised Consent Order.   The

record of this case is clear that the Trustee has agreed to the findings of fact in order to

permit the State Court to apply the applicable law to these matters and to enter a

judgment to liquidate the State's claim against Debtor only.   The Court has faith that the

State Court will properly and fairly evaluate each case before it, notwithstanding the fact

that this Court has deferred to the Trustee's business judgment that continuing to fight the

entry of a judgment against a debtor whose answer has been stricken for discovery

violations and is defunct without business or resources is a sensible approach.

For all of the above reasons, the Court is persuaded, and finds and concludes, that in

proposing the compromise, the Trustee has acted in good faith, under an honest belief that

the settlement is in the best interest of the estate, and that she has adequately informed

herself of the material facts and the applicable law, consistent with the business judgment

rule.   The Trustee clearly considered the nature of the State's claims, the Estate's likely

defenses, litigation costs, and the practical obstacles to defending the State's claims and

reasonably concluded that further defense of the Action would have an overall negative effect on creditors of the Estate.   Moreover, the record presented at the hearing, while not without its weaknesses, is sufficient for this Court to perform its independent duty to analyze the proposed settlement.   "The big picture here convinces the Court that this settlement should be approved because it does not fall below the 'lowest point of reasonableness.'"   *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 153 (D. Md. 2001), *aff'd sub nom. U.S. ex rel. Rahman v. Colkitt*, 61 F. App'x 860 (4th Cir. 2003) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).   Accordingly, the objections raised by Quattrochi and joined by Debtor will be overruled, and

IT IS HEREBY ORDERED that the Motion is **GRANTED**.

**END OF DOCUMENT**

**Distribution List**

**All parties on the attached Mailing Matrix**

Label Matrix for local noticing
113E-1
Case 18-69019-lrc
Northern District of Georgia
Atlanta
Wed Jul 17 16:52:45 EDT 2019

A & A Balloon Rides LLC
15 Ermer Rd.
Salem, NH 03079-1271

AERIAL PATROL
116 Rotor Way,
Sherwood, AR 72120-2797

AMERICAN HELICOPTERS INC
10503 Wakeman Dr,
Manassas, VA 20110-7811

ATD Flight Systems
10 NW Richards Road
Kansas City, MO 64116-4253

Air Capital Dropzone Skydiving
7015 S 143rd East
Derby, KS 67037-9576

Jonathan A Akins
Schreeder, Wheeler & Flint, LLP
Suite 800
1100 Peachtree Street NE
Atlanta, GA 30309-4516

Allyson Sherwood
Apt. 304
310 Passaic Ave.
Harrison NJ 07029-2837

Amazing Adventures
PO Box 891951
Temecula, CA 92589-1951

Amazing Adventures/Del Mar
Del Mar, CA 92014

Amazing Adventures/Temecula
Temecula, CA 92592

American Freedom Hot Air Ballo
617 Briarwood Dr.
Elverson, PA 19520-8635

Anna Smelser
Unit C
5709 Vosler Ave.
JBER AK 99506-4528

Arkansas Air Sports
1 Airport Rd
Morrilton, AR 72110-9243

Asta Quattrocchi
2460 Due West Circle
Kennesaw, GA 30152-3304

Asta Quattrocchi
2460 Due West Circle NW
Kennesaw, GA 30152-3304

Bac Helicopters
5502 Route 104
Williamson, NY 14589-9625

Balloons Unlimited
20273 Unison Rd
Round Hill, VA 20141-1846

Beth Gonzalez
No. 104
8125 112th Street
Seminole Florida 33772-4664

Boise Hot Air Company
Garden City, ID 83714

Bullseye Auction & Appraisal, LLC
Mr. Scott Schwartz
500 Pike Park Drive, Suite F
Lawrenceville, GA 30046-2416

CHARLOTTE HELICOPTERS
1110 Baron RD
Waxhaw, NC 28173-9322

Camorin, LLC
2601 Summers St.
Kennesaw, GA 30144-3547

Canton Air Sports
14008 Union Ave NE,
Alliance, OH 44601-9312

Captain Telegram
719 Elmwood Ave
Columbia, SC 29201-2001

Christopher M. Carr
40 Capitol Square, S.W.
Atlanta, GA 30334-9057

Cassy Pressley
Apt. 1820
13300 Atlantic Blvd.
Jacksonville FL 32225-6147

Charlotte Helicopters
1499 Airport Rd,
Monroe, NC 28110

Cherokee Helicopters
264 Casino Trail,
Cherokee, NC 28719-9154

Christine Jeffries
4821 Sharon Drive
Evans GA 30809-6207

Christine Kabay
112 Grandvue Drive
Sarver, PA 16055-9568

John D. Christy
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street
Suite 800
Atlanta, GA 30309-4516

Classic Helicopter Corp
2143 E Street Suite 2
Auburn, WA 98002-1612


Cleveland Skydiving Center
15199 Grove Rd
Garrettsville, OH 44231-9541

Comcast
1575 Church St.
Decatur, GA 30033-6055

Courtney Munn-Huesca
14639 Evergreen Drive
Burton, OH 44021-9649


Damn Yankee Balloons: Lewiston
241 Weld St Lewiston / Auburn,
Lewiston, ME 04240

David Doidge and Lisa Doidge
a/k/a Lisa Doidge-William Cameron(Bill)
1716 Highland Dr. SW
Vero Beach FL 32962-6948

Debra Castelot
PO Box 383
66 Summer Street
Peterborough, NH 03458-2455


Delmarva Balloon Rides
100 North Main Street
Greensboro, MD 21639-1472

Gregory D. Ellis
Lamberth, Cifelli, Ellis & Nason, P.A.
Suite N313
1117 Perimeter Center West
Atlanta, GA 30338-5445

Endless Mountain Skydivers
17 Runway Rd Tunkhannock
Tunkhannock, PA 18657-5802


Epiq Global
Two Ravinia Drive
Suite 850
Atlanta, GA 30346-2126

Erran Yearty
4825 Thicket Path
Acworth, GA 30102-7953

Explore FreeFall
3477 S. 200 E. Franklin
Franklin, IN 46131


Fair Winds, Inc.
PO Box 4253
Boulder, CO 80306-4253

Falcon Exhibition Skydiving Te
Noah's Ark Airport
7620 NW River Rd
Kansas City, MO 64152

Felipe Velasco
6 Octavia Way
Safety Harbor FL 34695-5217


Will B. Geer
Wiggam & Geer, LLC
Suite 1245
50 Hurt Plaza SE
Atlanta, GA 30303-2916

Gentle Breezes, LLC
3807 State Rd 19
Sun Prairie, WI 53590-9371

George W. Fitting
5522 Baum Blvd.
Apt. 210
Pittsburgh, PA 15232-5201


Georgia Department of Labor
148 Andew Young Int'l Blvd. NE
Atlanta, GA 30303-1751

Georgia Department of Revenue
1800 Centrury Center Blvd
Suite 9100
Atlanta, GA 30345

Georgia Dept. of Labor
Suite 826
148 Andrew Young Inter. Blvd., NE
Atlanta GA 30303-1751


Georgia Dept. of Labor
Suite 910
148 Andrew Young Inter. Blvd., NE
Atlanta GA 30303-1751

Great Flight Balloons
2835 Silver Creek Dr
New Albany, IN 47150-1938

Whitney W. Groff
Georgia Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-9057


H1 Flight Inc.
2417 Regency Rd. Ste B
Lexington, KY 40503-2947

HELITEAM
235 Nilson Way,
Orlando, FL 32803-6488

Heaven Bound Ascensions
66 North Villageview Rd
Tallmadge, OH 44278-2040

Helinet Aviation
16303 Waterman Dr.
Van Nuys, CA 91406-1222

High Sky Adventures
60298 Highway 50
Penrose, CO 81240-9513

High Tide Helicopters
4345 Airport Rd SE,
Southport, NC 28461


Hot Air Expeditions
Deer Valley Airport 704 west D
704 West Dear Valley Rd
Phoenix, AZ 85027

ISLAND EXPRESS
1175 Queens Hwy
Long Beach, CA 90802-6332

In Flight Ballon Adventures
Spain Inn 2
1045 State Hwy 173
Asbury, NJ 08802-1175


ANNE S Infinger * (T)
40 Capitol Square, S.W.
Atlanta, GA 30334-9057

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Jacquelyn L Kneidel
2 Martin Luther King, Jr. Dr.
Suite 356 East Tower
Atlanta, GA 30334


Jeff Prahl
7367 Hollywood Blvd
Apt 205
Los Angeles, CA 90046-2968

John  Quella
1611 Delaware St.
Oshkosh WI 54902-6724

Jonathon Tamm
4006 Woodland Avenue
Royal Oak, MI 48073-1843


Jonelle Bein
a/k/a Christina (Tina) Bein
5627 S.E. Paramount Dr.
Stuart FL . 34997-8515

Julie Lynn Howe
1309 Monter Avenue
Louisville OH 44641-2033

Just Say Skydive Inc.
d/b/a School Of Human Flight
c/o Cindy Pirkkala, President
2136 Faulk Dr.
Tallahassee FL 32303-7312


Jacquelyn L. Kneidel
Office of the Attorney General
Suite 356
2 Martin Luther King, Jr. Drive, SE
Atlanta, GA 30334-9077

Lake Wales Skydiving
440 South Airport Rd
Lake Wales, FL 33859-8170

Lamberth Cifelli Stokes Ellis & Nason, P.A.
Suite W212
1117 Perimeter Center West
Atlanta, GA 30338-5456


Leah Diamond
c/o Ryan R. Hendley
Post Office Box 2863
Tuscaloosa, Alabama 35403-2863

Lone Star Parachute Center
2953 N Magnolia Ave
Luling, TX 78648-4565

M. Dru Levasseur
1450 La France Street, NE
Apt 542
Atlanta, GA 30307-2943


MONARCH HELICOPTERS
220 Tune Airport Dr.
Nashville, TN 37209-1060

Maria Tu
95 Heights Lane
Apt 35
Trevose, PA 19053-7665

Marisol Angelica Vazquez
2255 Arkansas Ln Apt# 1213
Grand Prairie, TX 75052-7425


Marvelay, LLC.
2601 Summers St, Suite 300
Kennesaw, GA 30144-3548

Miami Fly
14150 SW 129th ST.
Miami, FL 33186-5310

Michigan Balloon Adventures
26 South Diamond Road
Mason, MI 48854-9635


Martha A. Miller
Martha A. Miller, P.C.
P. O. Box 5630
Atlanta, GA 31107-0630

Martha A. Miller
Martha Miller Law, LLC
P. O. Box 5630
Atlanta, GA 31107-0630

Napa Valley Drifters
3385 Solano Ave
Napa, CA 94558-3203

New Flyers Association
2160 West Case Road
Columbus, OH 43235-2539

No Limits Skydiving: West Point
1001 Airport Rd
Mattaponi, VA 23110

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315

Old World Balloonery
12600 W 142nd St.
Overland Park, KS 66221-8072

P&L Air
4701 E Saile Dr.
Batavia, NY 14020-1088

Patricia D. Ireland
88 Pierce St.
Westover WV 26501-4459

Paula J. Richard
413 West Easy St.
Destrehan LA 70047-4125

Phoenix Flight Academy
3867 N. Aviation Way
Greenfield IN 46140-9640

Piedmont Skydiving
799 Red Acres Rd
Salisbury, NC 28147

Randall W. Williams
Kristie G. Fletcher
No. C
150 13 Ave. North
Jacksonville Beach FL 32250-7369

Republic Helicopters
8315 FM 2004
Santa Fe, TX 77510-8451

Robin Lynn McKay
218 Whetherbine Way West
Tallahassee FL 32301-8517

William A. Rountree
Rountree Leitman & Klein, LLC
Century Plaza I
2987 Clairmont Road
Suite 175
Atlanta, GA 30329-4406

Royal Gorge Skydive
Fremont County Airport
60298 Highway 50,
Penrose, CO 81240-9513

Scott Jasinkowski
7023 Twin Lakes Rd
Perrysburg, OH 43551-6103

Seattle Ballooning
16247 8th Ave SW
Seattle, WA 98166-2913

Shruti Shenbagam
Apt. 203
5090 N Primitovo Way
Fresno CA 93710-8237

Silverhawk Aviation
4505 Aviation Way
Caldwell, ID 83605-8143

Sinton Helicopters
4720 Wing Way #118
Paso Robles, CA 93446-8518

Sky Adventures
4191 Locust Valley Ln
Oxford, MI 48370-1401

Sky Down Skydiving, LLC
5111 Aviation Way
Caldwell, ID 83605-1500

Skydive Alabama
228 Co Rd 1360
Vinemont, AL 35179-6023

Skydive Cross Keys
300 Dahlia Ave
Williamstown, NJ 08094-3470

Skydive Eagle Creek
29338 SE Heiple Rd
Eagle Creek, OR 97022

Skydive Georgia
493 Airport Rd.
Cedartown, GA 30125-5049

Skydive Grand Haven
16448 Comstock St.
Grand Haven, MI 49417-9423

Skydive Hollister
Hollister, CA 95023

Skydive Indianapolis
3009 State Road 28
Fortville, IN 46040-1000

Skydive Mesquite
1200 Kittyhawk Drive
Mesquite, NV 89027-3212

Skydive Mesquite, LLC
1737 TALON AVENUE
HENDERSON, NV 89074-0951

Skydive Midwest
13851 56th Rd, Sturtevant
Sturtevant, WI 53177-2139

Skydive Oregon
12150 S Hwy
211 Molalla
Molalla, OR 97038

Skydive Palm Beach
Palm Beach County Glades
Pahokee, FL 33476

Skydive Pennsylvania
496 old Ash Road
Mercer, PA 16137-4044

Skydive Philadelphia
1300 Schoolhouse Rd
Perkasie, PA 18944-2110

Skydive Taft
500 Airport Road Taft
Taft, CA 93268-3017

Skydive Temple
15771 South I-35
Salado, TX 76571

Skydive Tennessee
807 william Northern Blvd
Tullahoma, TN 37388-4734

Skydive The Rock
4046 WI 67 Hangar 2
Beloit, WI 53511

Skydive Three Forks
Hanger #20
1680 Airport Rd
Three Forks, MT 59752-9085

Skydive Warren County
4925 N. State Route 42
South Point, OH 45680

Skydive West Coast
200 S. Hathaway Street
Banning, CA 92220-5900

Skydive West Texas
Seagraves Airport
Seagraves, TX 79359

Snohomish Balloon Ride
9900 Airport Way
Snohomish, WA 98296-8273

South Bay Aviation
3481 Airport Dr
Torrance, CA 90505-6180

South Carolina Skydiving
11920 Gapeway Rd.
Andresws, SC 29510-6546

Southern Minnesota Skydiving
35493 110th St.
Waseca, MN 56093-4520

Stanley Obrecht
56 Lou Juan Dr.
Glen Carbon IL 62034-1921

State of Georgia
Georgia Department of Law
Jacquelyn L. Kneidel
2 Martin Luther King, Jr. Drive
Suite 356, East Tower
Atlanta, GA 30334

State of Georgia
ex rel. Christopher M. Carr
Georgia Department of Law
Whitney Groff,
40 Capitol Square, SW
Atlanta, GA 30334-9057

State of Georgia, co JKneidel
Consumer Protection, 2 Martin
Luther King, Jr. Dr. Ste 356
Atlanta, GA 30315-2735

Stonebridge Accounting & Forensics LLC
Spence Shumway
Stonebridge Accounting & Forensics, LLC
P.O. Box 1290
Grayson, GA 30017-0025

Sunrise Balloons Miami
18300 SW 137th Ave
Miami, FL 33177-6482

Susan Thosley
10395 Wellington Rd.
Streetsboro OH 44241-5156

Taking off Hot Air Balloon Com
Foley, AL 36535

Texas Aviation Academy
1642 Entrance Drive
New Braunfels, TX 78130-2741

The Heli Team
4040 E Concord St
Orlando, FL 32803-5220

The Sandifer Law Firm, LLC
2987 Clairmont Road
Suite 350
Atlanta, GA 30329-4435

Thomas Palmer
a/k/a David and Katie Palmer
358 W. Whitetail Court
Kuna ID 83634-3199

Tiffany Kay
339 Snow Ave.
Browns Mills NJ 08015-1731

Tinita Murray
1107 WillowBrook Dr.
Fishers IN 46038-2051

Total Flight Solutions
450 Airport Rd St 200
Louisburg, NC 27549-6806

Tranquility Balloon Rides
2330 Willow Oak Dr
Wesley Chapel, FL 33544-5604


Robert Trauner
P. O. Box 421025
Atlanta, GA 30342-8025

Trudy Rothrock
697 Red Arrow Tr
Palm Desert, CA 92211-7427

United States Attorney
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta GA 30303-3309


WESTERN PARACHUTE SALES
29388 SE Heiple Rd
Eagle Creek, OR 97022-9664

Wardell Bradford
3630 Maywood Avenue
Fort Wayne IN 46806-4572

Western New york Skydivers
4907 Pine Hill
Albion, NY 14411


World Skydiving Center
Herlong Recreational Airport
9300 Normandy Blvd #400
Jacksonville, FL 32221-5522

ZEPHYR HELICOPTER COMPANY
3499 Airport Circle
Steamboat Springs, CO 80487


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(d)Amazing Adventures, Inc.
PO Box 891951
Temecula, CA 92589-1951

(u)Camorin, LLC

(d)Martha A. Miller
Martha Miller Law, LLC
P. O. Box 5630
Atlanta, GA 31107-0630


(u)Nashville Flight Training
801 Hanger Lane

(u)Asta Quattrocchi

End of Label Matrix
Mailable recipients    160
Bypassed recipients      5
Total                  165